**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| U.S. HOLDINGS, INC., a Florida corporation, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:09-cv-23222-KMM |
| SUNTRUST BANKS, INC., a Georgia corporation, and SUNTRUST ROBINSON HUMPHREY, INC., a Tennessee corporation, | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS'  MOTION TO DISMISS**

Defendants SunTrust Banks, Inc.[1] ("SunTrust") and SunTrust Robinson Humphrey, Inc. ("STRH") (collectively, "Defendants") hereby file this memorandum of law in support of their motion to dismiss Plaintiff U.S. Holdings, Inc.'s ("Plaintiff") Complaint.

## I.        INTRODUCTION

This is an action in which Plaintiff seeks to recover from Defendants for its alleged losses due to the illiquidity of its auction rate securities ("ARS") investments caused by the collapse of the ARS market in February 2008.  Compl. ¶ 7.  Plaintiff alleges it believed the ARS it purchased were short-term instruments, but, in actuality, they were long-term bonds with maturities of 20 or more years.  *Id.*  Although Plaintiff admits it is (i) a large Florida corporation with five affiliated businesses and physical facilities in six states, and (ii) a sophisticated business run by sophisticated businesspeople with well-defined investment objectives (Compl.

---

[1] SunTrust Banks, Inc. is a holding company that acts only through its subsidiaries.  SunTrust Bank is the subsidiary that provides banking services to customers.

¶¶ 8, 13, 26, 28), it claims it was completely dependent upon Defendants for investment guidance and blames Defendants for its as yet unrealized losses due to the illiquidity of its ARS investments. *Id.* ¶ 21.

Each of Plaintiff's claims should be dismissed. *First*, Florida's economic loss doctrine bars Plaintiff's claims for breach of fiduciary duty (Count I) and negligence (Count II). *Second*, Plaintiff cannot state a claim for breach of fiduciary duty (Count I) because it fails to allege the existence of a fiduciary relationship with Defendants. *Third*, Plaintiff's claim for unjust enrichment (Count IV) fails because it failed to plead that an adequate remedy at law does not exist. *Fourth*, Plaintiff cannot maintain Count VI of its Complaint because there is no private right of action for the alleged violation of Section 17(a) of the Securities Act of 1933 (the "Securities Act"). *Fifth*, because Plaintiff fails to allege a primary violation of the Securities Exchange Act of 1934 (the "Exchange Act"), its claim under Section 20(a) (Count VII) must be dismissed. *Finally*, Plaintiff's entire Complaint sounds in fraud and Plaintiff failed to plead its claims with particularity as required by Rule 9(b).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Parties

Plaintiff alleges it is a Florida corporation with its principal place of business in Hialeah, Florida. Compl. ¶ 4. Plaintiff describes itself as a "major manufacturer for the underground contracting industry . . . with five affiliated businesses and physical facilities in six states." *Id.* ¶ 8.

SunTrust is a Georgia corporation, which provides an array of banking services, including investment, trading, banking and financial, to its customers, including Plaintiff. *Id.* ¶ 5. STRH is a Tennessee corporation, which provides broker-dealer and investment-adviser

services.  *Id.* ¶ 6.  Although acknowledging they are separate entities, Plaintiff claims the two entities are closely related.  *Id.* ¶¶ 22-23.

**B.      Plaintiff's Investments in ARS**

Plaintiff alleges that starting in late 2001, Plaintiff began purchasing ARS through Defendants.  *Id.* ¶ 31.  Plaintiff claims that a SunTrust employee, Mr. DeBasio, told Plaintiff that ARS were "very short term and liquid cash instruments or notes" (*id.* ¶ 31), and "extremely safe investments" (*id.* ¶ 35), but did not explain to Plaintiff how the ARS market worked or the inherent risks in the market.  *Id.* ¶ 33.  Plaintiff also alleges that after SunTrust sold ARS to its clients, including Plaintiff, SunTrust stopped participating in the ARS auctions, and the auction market then failed.  *Id.* ¶ 36.  Finally, Plaintiff alleges that it currently holds $16 million face value of various ARS (*Id.* ¶ 35), and that because of the failure of the ARS market, it has "no prospect of selling its ARS" other than "at a steep discount from par value."  *Id.* ¶ 37.

**C.      Plaintiff's Claims**

On October 23, 2009, Plaintiff filed its Complaint in this matter.  In its Complaint, Plaintiff seeks to recover against Defendants for its unrealized losses suffered from its investments in ARS.  Each of Plaintiff's claims is based on Plaintiff's allegations that SunTrust made misrepresentations to Plaintiff about the ARS being short-term liquid notes, and that SunTrust also failed to disclose to Plaintiff "that SunTrust was materially involved as a trading participant in and propping up the ARS auction market."  *See, e.g.*, *id.* ¶ 52.

Plaintiff asserts seven claims against Defendants, including:  Breach of Fiduciary Duty (Count I), Negligence (Count II), Fraud in the Inducement (Count III), Unjust Enrichment (Count IV), Violation of Florida Statute § 517.301 (Count V), Violation of Section 17(a) of the

Securities Act (Count VI), and Violation of Section 20(a) of the Exchange Act (Count VII). Defendants now move to dismiss all of Plaintiff's claims.[2]

### III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To satisfy this standard, a plaintiff must plead sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *Twombly*, 550 U.S. at 555-56 & n.3 (rejecting as insufficient "blanket assertions," "bare averment[s]," and "legal conclusion[s] couched as . . . factual allegations").  Dismissal is required "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1949

### IV.    ARGUMENT

**A.    Florida's Economic Loss Doctrine Bars Plaintiff's Claims for Breach of Fiduciary Duty And Negligence (Counts I and II).**

Under Florida's economic loss doctrine, "there can be no independent tort flowing from a contractual breach which would justify a tort claim solely for economic losses" absent "some conduct resulting in personal injury or property damage." *Karn v. Coldwell Banker Residential Real Estate, Inc.*, 705 So. 2d 680, 680 (Fla. Dist. Ct. App. 1998) (citing *AFM Corp. v. S. Bell Tel. & Tel. Co.*, 515 So. 2d 180, 181-82 (Fla. 1987)).  Notably, "it is irrelevant that [Plaintiff] has not asserted any contractual claims against [Defendants]" because Defendants "need not be in privity

---

[2] Plaintiff does not assert a claim against STRH for breach of fiduciary duty (Count I) or violation of Florida Statute § 517.301 (Count V).

of contract with [Plaintiff] in order for the tort claims . . . to be dismissed under the economic

loss rule." *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1314

(S.D. Fla. 2002); *see also Warter v. Boston Sec., S.A.*, No. 03-81026-CIV-

RYSKAMP/VITUNAC, 2004 WL 691787, at *12 (S.D. Fla. Mar. 22, 2004) (dismissing

negligence claim against bank and securities firm and holding that a "party may not recover

purely economic damages in a negligence action absent allegations of separate physical injury or

property damage.  Whether a contract exists between the parties is irrelevant; a party may not

assert a claim for negligence if the only damages claimed are economic losses.") (citation

omitted).[3]  Thus, regardless of whether there was a contractual, business relationship between

Plaintiff and Defendants, Plaintiff's claims for breach of fiduciary duty and negligence should be

dismissed because Plaintiff has failed to allege that it suffered any personal injury or property

damage.

Here, Plaintiff makes no attempt to allege that it suffered "separate physical injury or

property damage."  *Warter*, 2004 WL 691787, at *12.  Rather, all Plaintiff alleges is that it

suffered a "purely economic" loss:

> [Plaintiff] has no prospect of selling its ARS, since the auction market no longer
> even exists.  [Plaintiff's] only opportunity to sell its ARS, if at all, is at a steep
> discount from par value.
>
> . . .
>
> Thus, in connection with [Plaintiff's] intent to rescind all of its ARS purchases
> made by SunTrust, [Plaintiff] hereby proffers a tender of the $16 million face
> value ARS that it is holding to SunTrust.  Further, [Plaintiff] reserves the right to

---

[3] The Florida Supreme Court has carved out an exception to the economic loss rule for cases
"against a *professional* for his or her negligence" even where "the damages are purely economic
in nature and the aggrieved party has entered into a contract with the professional's employer."
*Moransais v. Heathman*, 744 So. 2d 973, 983-84 (Fla. 1999) (emphasis added).  Such an
exception does not apply here, however, because (1) the Complaint does not allege that SunTrust
was a professional, and (2) "a securities broker is not a 'professional' for purposes of the
economic loss rule because securities brokers are not required to obtain a four-year degree for
licensing in Florida."  *Warter*, 2004 WL 691787, at *13.

> liquidate these ARS and seek damages against SunTrust for the difference in the amount received compared to the original purchase price of the ARS.

Compl. ¶¶ 37-38.  As such, this Court should dismiss Plaintiff's breach of fiduciary duty and negligence claims under Florida's economic loss rule.

**B.     Plaintiff Has Not Adequately Pled Facts Showing the Existence of a Fiduciary Relationship (Count I).**

Although the Complaint alleges in conclusory fashion that "SunTrust owed [Plaintiff] a fiduciary duty," (Compl. ¶ 51), Plaintiff has not pled facts sufficient to show that a fiduciary relationship existed between it and SunTrust.[4]  As a general rule, "'the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities.'"  *Carpenter v. Cmty. Bank of Homestead*, 710 So. 2d 65, 66 (Fla. Dist. Ct. App. 1998) (quoting *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518-19 (Fla. Dist. Ct. App. 1994)).  A fiduciary relationship will only arise between a bank and its customer in two limited circumstances:  (1) "where the bank knows or has reason to know that the customer is placing trust and confidence in the bank and is relying on the bank so to counsel and inform him"; and (2) "where the lender takes on extra services for a customer, receives any greater economic benefit than from a typical transaction, or exercises extensive control."  *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 208 (Fla. Dist. Ct. App. 2003) (citing *Capital Bank*, 644 So. 2d at 519).  Because these limited exceptions are not present here, Plaintiff has not adequately alleged that a fiduciary relationship existed

---

[4] Plaintiff has not alleged a breach of fiduciary duty claim against STRH.  *See* Compl., Count I, Wherefore Clause ("Plaintiff USH asks for judgment in its favor and against defendant SunTrust for damages.").

between Plaintiff and SunTrust and, as a result, Plaintiff's breach of fiduciary duty claim must be dismissed.[5]

      **1.**      **Plaintiff's allegation that it was heavily dependent on SunTrust is not plausible under *Twombly*.**

"To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the **weaker** party." *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. Dist. Ct. App. 1993) (emphasis added) (citing *Bankest Imports, Inc. v. Isca Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989).   While Plaintiff alleges generally that it placed "trust, dependence, confidence, . . . and reliance . . . with SunTrust," and that "SunTrust was . . . aware of [Plaintiff's] heavy reliance, dependency upon and trust in SunTrust," (Compl. ¶ 12), its claims are contradicted by its own characterization of its business and level of sophistication:

> Over the years, through its prudent management and continual reinvestment back into the company, [Plaintiff] has grown to be a major manufacturer for the underground contracting industry.
>
> . . .
>
> [Plaintiff] has grown and survived in business for nearly a century because of its consistent conservative philosophy of carefully watching its cash management in all phases of its business, and retaining the earnings of the company for contingencies and to take advantage of growth opportunities when presented.
>
> . . .
>
> A significant reason [Plaintiff] has grown in good times and survived in bad times for nearly a century, has been its consistent management philosophy of practicing

---

[5] General, conclusory statements in SunTrust's Code of Business Conduct and Ethics, not directed toward any specific customer, cannot form the basis for a fiduciary relationship between Plaintiff and SunTrust under Florida law.  Compl. ¶ 19.  Similarly, Plaintiff quotes a portion of SunTrust's magazine, *Solaris*, which states that SunTrust is "deeply committed to understanding your business and personal goals."  Compl. ¶ 20.  This does not state that SunTrust owes a fiduciary duty to its clients and, even if it did, would also be insufficient to create a fiduciary duty between Plaintiff and SunTrust.  *See generally Carpenter*, 710 So. at 66 ("'the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities.'").

> conservative cash management, passed down through the generations of DeBogory family ownership.
>
> . . .
>
> [Plaintiff's employee] was provided standard and standing explicit instructions regarding security and liquidity requirements of investments, which were communicated by [Plaintiff's employee] to [Defendant's employee] at each conversation, and which [Defendant's employee] acknowledged. . . .  [Plaintiff] never strayed from its clearly articulated investment criteria.

Compl. ¶¶ 8, 13, 26, 28.  Thus, Plaintiff's allegations demonstrate that, far from a situation where SunTrust had undertaken to "protect [a] weaker party," *Watkins*, 622 So. 2d at 1065, SunTrust knew it was dealing with a sophisticated business run by sophisticated businesspeople with well-defined investment objectives.  Plaintiff's claim of heavy dependence on SunTrust is thus not "plausible on its face" under the Supreme Court's recent guidance in *Twombly*.

### 2. Plaintiff does not adequately allege that SunTrust took on extra services for it, received any greater economic benefit than from a typical transaction, or exercised extensive control.

Plaintiff has not alleged that SunTrust took on extra services for it, that SunTrust received any greater economic benefit from its relationship with Plaintiff than from a typical transaction, or that SunTrust exercised extensive control over it.  *Susan Fixel, Inc.*, 842 So. 2d at 208  (citing *Capital Bank*, 644 So. 2d at 519).  First, rather than alleging that SunTrust took on extra services for it, Plaintiff alleges nothing other than that it utilized SunTrust for a variety of banking services.  Compl. ¶ 14.[6]  Second, rather than allege that SunTrust received any greater benefit from its relationship with Plaintiff than from a typical transaction, all Plaintiff alleges is that SunTrust's banking relationship with Plaintiff provided SunTrust with an opportunity for "significant fee opportunities."  *Id.* ¶ 15.  Plaintiff does not allege, because it cannot, that these

---

[6] That SunTrust employees provided ice and food for Plaintiff's employees after a natural disaster (Compl. ¶ 14), can hardly be said to have created a fiduciary relationship where one otherwise did not exist.

fee opportunities were greater than SunTrust would have enjoyed with another client who utilized it for the same number of services.  Finally, Plaintiff does not allege that SunTrust exercised extensive control over it.   To the contrary, Plaintiff alleges that it had a very "consistent management philosophy of practicing conservative cash management," that it, through an employee, communicated this philosophy to SunTrust before each investment opportunity, and that it "never strayed from its clearly articulated investment criteria."  *Id.* ¶¶ 13, 26.  Because Plaintiff has not adequately alleged the elements of a fiduciary relationship between it and SunTrust under *Susan Fixel, Inc.*, Plaintiff's claim for breach of fiduciary duty should be dismissed.[7]

**C.     Plaintiff's Unjust Enrichment Claim Should Be Dismissed Because Plaintiff Fails to Allege There Is No Adequate Remedy At Law (Count IV).**

Plaintiff cannot sustain a claim for unjust enrichment because it fails to allege that there is no adequate remedy at law.  "[T]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy."  *Webster v. Royal Carribean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) (quoting *Gary v. D. Agustini & Asociados, S.A.*, 865 F. Supp. 818, 827 (S.D. Fla. 1994)).  Where a plaintiff fails to allege that its legal remedy is inadequate, it cannot state a claim for unjust enrichment.   *Martinez v. Weyerhaeuser Mortg. Co.*, 959 F. Supp. 1511, 1518 (S.D. Fla. 1996) ("Because Plaintiffs fail to allege that an adequate remedy at law does not exist, and the Court is not convinced that this is clear from the face of the Amended Complaint, Count III fails to state a claim for unjust

---

[7] Plaintiff also alleges that SunTrust owes it a fiduciary duty because it serves as Plaintiff's "investment adviser" pursuant to The Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 *et seq.*  Compl. ¶ 16.   Under this Act, however, banks are excluded from the definition of "investment adviser" except if it is an "investment company," or "to the extent that [the] bank or bank holding company serves or acts as an investment adviser to a registered investment company."  15 U.S.C. § 80b-2.  Here, Plaintiff does not allege that SunTrust is an "investment company" or serves as "an adviser to a registered investment company."

enrichment and will be dismissed from the Amended Complaint.").  Because Plaintiff fails to allege that there is no adequate remedy at law (Compl. ¶¶ 72-76), Plaintiff's unjust enrichment claim must be dismissed.

**D.    Plaintiff's Federal Claims Must Be Dismissed (Counts VI and VII).**

   **1.    There is no private right of action under Section 17(a) of the Securities Act of 1933 (Count VI).**

Count VI of Plaintiff's Complaint alleges that Defendants violated Section 17(a) of the Securities Act of 1933.  Compl. ¶¶ 93-112.  There is, however, no private right of action under Section 17(a).  *Currie v. Cayman Res. Corp.*, 835 F.2d 780, 784-85 (11th Cir. 1988) ("[Section] 17(a) of the Securities Act of 1933 points away from the implication of a private cause of action. We therefore hold that section 17(a) does not imply a private cause of action and that the district court correctly dismissed this theory of relief.") (citation and quotations omitted); *Smith v. Smith*, 184 F.R.D. 420, 422 (S.D. Fla. 1998) (Moore, J.) ("The law in the Eleventh Circuit, however, clearly states there is no private right of action under Section 17.") (citing *Currie*, 835 F.2d at 784-85).  As Count VI of Plaintiff's Complaint is expressly filed under Section 17(a), it must be dismissed.

   **2.    Because Plaintiff has not pled an underlying violation of the Exchange Act, Plaintiff's Section 20(a) claim must be dismissed (Count VII).**

Count VII of Plaintiff's Complaint alleges that Defendants violated Section 20(a) of the Securities Exchange Act of 1934.  Compl. ¶¶ 113-119.  Section 20(a) of the Exchange Act expressly provides that

> Every person who, directly or indirectly, controls ***any person liable under any provision of this chapter or of any rule or regulation thereunder*** shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C.A. § 78t (emphasis added).  As such, in order to sustain a claim under Section 20(a), Plaintiff must allege: (1) that primary liability under the Exchange Act exists; (2) that Defendants had the power to control the general business affairs of the corporation; and (3) that the defendant had the power to control or influence the specific corporate policy which resulted in primary liability.  *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (affirming dismissal of Section 20(a) claim where the complaint failed to allege primary liability under the Exchange Act) (citing *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001)).

Here, Plaintiff expressly bases its Section 20(a) claim on an alleged violation of Section 17(a) of the Securities Act.  Compl. ¶ 116.  Plaintiff does not allege a primary violation of the Exchange Act.  Because Plaintiff has not alleged primary liability under the Exchange Act, Plaintiff's Section 20(a) claim must be dismissed.

**E.      Plaintiff Failed to Plead Its Claims With The Particularity Required by Rule 9(b) (All Counts).**

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), Plaintiff must identify (1) the precise statements or omissions made; (2) in what documents or oral communications the representations were made; (3) the time and place of each statement or omission; (4) the person making or omitting such statement; (5) the content of each statement and the manner in which it misled the plaintiffs; and (6) what the defendants obtained as a consequence of the fraud.  *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

Plaintiff's entire Complaint sounds in fraud.  Compl. ¶ 41 ("[Plaintiff] is informed and believes this was a systematic approach by SunTrust to hide from all of its clients the significant

profit SunTrust or STRH was making by its active participation in the ARS market."); ¶ 46 (alleging that SunTrust made "overt misrepresentations" to Plaintiff "about the ARS being short term liquid notes," and that "SunTrust also failed to disclose to [Plaintiff] its role in helping to create, then propping up, manipulating, misrepresenting and then abandoning the ARS auction market after it protected itself and select other clients."); ¶ 47 ("SunTrust continued on with the same illegal conduct after that date, all the way up to February 2008, when the ARS auction market finally failed.  This willful and wanton conduct also supports an award of punitive damages.").  Regardless of the theories or labels attached, these are clearly allegations of fraud, and thus all of Plaintiff's claims are subject to the heightened standard of Rule 9(b).  *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277-78 (11th Cir. 2006) (requiring particularized pleading for all claims when the same misrepresentation supports fraud claims and non-fraud claims); *see also Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 608-09 (N.D. Cal. 2007) ("Plaintiffs' claims of breach of fiduciary duty and negligence are based on allegations that [defendant] made various misrepresentations to plaintiffs, and thus are 'grounded in fraud.'  Claims that are 'grounded in fraud' are subject to the heightened pleading requirements of Rule 9(b), . . . even if fraud is not an element of the claim.").  Here, Plaintiff's allegations fall short of what is required.

Plaintiff merely alleges conclusory assertions of SunTrust's "overt misrepresentations to [Plaintiff] about the ARS being short term liquid notes instead of long term illiquid notes," and that "SunTrust also failed to disclose to [Plaintiff] its role in helping to create, then propping up, manipulating, misrepresenting and then abandoning the ARS auction market . . . ."  Compl. ¶ 46; *see also id.* ¶ 31 ("Starting in or about late 2001, DeBasio [, an employee of Defendants,] began purchasing bonds for [Plaintiff] that he not only told [Plaintiff] were very short term and liquid

cash instruments or notes, but also appeared very short term and liquid . . . ."); ¶ 33 (noting there was a "purchase conversation" and referring to ARS as "short term cash instruments").  Plaintiff does not allege the precise statements or omissions made, nor does it allege the content of each statement.  Plaintiff's allegations provide no particulars to support either SunTrust's knowledge of the falsity of any representations, or an intent to deceive, such as an economic motive.  To the contrary, the only inference that could logically be drawn from the Complaint's allegations of a long-standing, close working relationship between Plaintiff and SunTrust is that representatives of SunTrust would have no motive to knowingly misrepresent facts to Plaintiff.  Such allegations fall well short of the particularity required under Rule 9(b) for allegations of fraud.

More fundamentally, although Plaintiff acknowledges that SunTrust and STRH are separate entities, headquartered in different states and providing different services (Compl. ¶¶ 5-6), Plaintiff fails to describe specifically the role allegedly played by each defendant.  A complaint cannot satisfy Rule 9(b) by lumping all defendants together as one actor without "inform[ing] each defendant of the nature of his alleged participation in the fraud," *Brooks*, 116 F.3d at 1381, yet that is exactly what Plaintiff does in the Complaint with respect to SunTrust and STRH.  Because each of Plaintiff's claims against Defendants is "grounded in fraud," and because Plaintiff fails to allege the "who, what, when, where and how" of the alleged fraudulent conduct, Plaintiff's claims must be dismissed.  *See, e.g.*, *Leonard v. Stuart-James Co.*, 742 F. Supp. 653, 659 (N.D. Ga. 1990) (dismissing fraud claim lacking "specifically when, where, by whom, or specifically what that misrepresentation was").

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted, this 17th day of November, 2009.

/s/ David Tetrick, Jr.
David Tetrick, Jr.
dtetrick@kslaw.com
Florida Bar No. 097500
KING & SPALDING LLP
1180 Peachtree St., NE
Atlanta, Georgia 30309
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100

Attorney for Defendants SunTrust Banks,
Inc. and SunTrust Robinson Humphrey, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date I electronically filed the foregoing MEMORANDUM

OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS with the Court using the

CM/ECF system, which will send notification of such filing to all counsel of record identified on

the attached Service List.

Respectfully submitted, this 17th day of November, 2009.

> */s/ David Tetrick, Jr.*
> David Tetrick, Jr.
> dtetrick@kslaw.com
> Florida Bar No. 097500
> KING & SPALDING LLP
> 1180 Peachtree St., NE
> Atlanta, Georgia 30309
> Telephone:  (404) 572-4600
> Facsimile:  (404) 572-5100
>
> *Attorney for Defendants SunTrust Banks,*
> *Inc. and SunTrust Robinson Humphrey, Inc.*

## <u>SERVICE LIST</u>

**U. S. Holdings, Inc.  v.  SunTrust Banks, Inc. and SunTrust Robinson Humphrey, Inc.**
**Civil Action No. 1:09-cv-23222-KMM (Moore/Simonton)**
**United States District Court, Southern District of Florida**

Charles H. Lichtman
clichtman@bergersingerman.com
Berger Singerman
350 East Los Olas Boulevard, Suite 1000
Fort Lauderdale, Florida  33301
Telephone:  (954) 525-9900
Facsimile:  (954) 523-2872
Attorney for Plaintiff
Served via ECF filing