IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 09-23222-CIV-MOORE/SIMONTON

U.S. HOLDINGS, INC.,

    Plaintiff,

v.

SUNTRUST BANKS, INC., and
SUNTRUST ROBINSON HUMPHREY,
INC.,

    Defendants.

_____/

## ORDER GRANTING IN PART
## DEFENDANTS' MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss (dkt # 32). Plaintiff filed a Response (dkt # 38), and Defendants filed a Reply (dkt # 39).

UPON CONSIDERATION of the Motion, the Response, the Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.    BACKGROUND**

    A.    <u>Factual Background</u>

Plaintiff U.S. Holdings, Inc. ("USH") seeks to recover from Defendants for alleged losses in the Auction Rate Securities ("ARS") market, which collapsed in February 2008. Am. Compl. ¶ 6.[1] USH is a Florida corporation that describes itself as "a major manufacturer for the underground contracting industry." Am. Compl. ¶ 7. The Defendants are SunTrust Banks, Inc.

---

[1] The following facts are taken from the Amended Complaint (dkt # 28).

("SunTrust"), a bank, and SunTrust Robinson Humphrey, Inc. ("STRH"), a wholly-owned subsidiary of SunTrust (collectively, "Defendants"). Am. Compl. ¶¶ 4-5.

USH alleges that it relied on Defendants not only for investment advice, but also for the management of all or most of its financial affairs, including but not limited to the maintenance of its disbursement, payroll, and depository accounts; for a $10,000,000.00 business line of credit; and for the management of USH's employees' 401(k) accounts. Am. Compl. ¶¶ 13, 21. USH claims that its relationship with Defendants went far beyond the typical customer-bank relationship, such that Defendants assumed a fiduciary duty to USH. Am. Compl. ¶¶ 11-21.

According to USH, Defendants knew that USH wished to maintain a very conservative portfolio comprised entirely of safe, short-term, liquid investments. Am. Compl. ¶¶ 25-27. Despite this criteria, between March 2006 and February 2008 (when the ARS market collapsed), Defendants began investing USH's money in the ARS market; specifically, in long-term bonds with maturities of 20 years or longer that were traded through an auction process.[2] Am. Compl. ¶¶ 6, 29-32. This was done without USH being informed of the dangers of these investments. Am. Compl. ¶ 33. USH alleges that Defendants, and specifically one of SunTrust's Vice Presidents, Dave DeBasio ("DeBasio"),[3] deliberately misrepresented the nature of the financial instruments, leading USH to believe that the investments were more short-term and liquid than was actually the case. Am. Compl. ¶¶ 29-35. Only after the ARS market collapsed in February

---

[2] ARS are "debt or equity instruments with variable short-term rates and long-term maturities. They are bought and sold at auctions held at intervals of seven to thirty-five days. If successful, each auction resets the rate until the next auction and provides holders with short term liquidity. The purported advantage of auction rate securities was that investors got short term liquidity with rates higher than most other short term investments, while issuers got long term financing with rates lower and more flexible than most other long term financing." Zisholtz v. Suntrust Banks, Inc., No. 08-CV-1287-TWT, 2009 WL 3132907, at *1 (N.D. Ga. Sept. 24, 2009).
[3] DeBasio may have become a STRH employee in 2007. Am. Compl. ¶ 24.

2

2008 did USH learn that it held $14,800,000.00 in illiquid, untradeable bonds. Am. Compl. ¶¶ 37-38.

USH alleges that in addition to the face value of the securities, it is entitled to special damages for lost investment income and opportunities, expenses incurred from having to buy back certain Industrial Revenue Bonds, transaction costs from having to change banks, and the actual higher market rate of interest for long terms bonds that USH should have been paid, instead of the much lower interest rate payable on the securities. Am. Compl. ¶ 41. USH further alleges that it is entitled to punitive damages as a result of Defendants' wanton and willful misconduct. This alleged misconduct includes manipulation of the ARS market to make it falsely appear that the auctions were successful and legitimate when in fact they were not— a practice for which the U.S. Securities & Exchange Commission sanctioned SunTrust in May 2006. Am. Compl. ¶ 48.

B.   Procedural History

USH filed its initial Complaint (dkt #1) in this action on October 23, 2009, asserting seven claims against Defendants: breach of fiduciary duty (Count I); negligence (Count II); fraud in the inducement (Count III); unjust enrichment (Count IV); engaging in a fraudulent transaction prohibited by § 517.301, Florida Statutes, (Count V); violation of § 17(a) of the federal Securities Act of 1933 (Count VI); and violation of § 20(a) of the Federal Securities Exchange Act of 1934 (Count VII). On November 17, 2009, Defendants filed their initial Motion to Dismiss (dkt #8), arguing that: (1) Counts I and II were barred by the economic loss rule; (2) Count I did not adequately allege the existence of a fiduciary duty; (3) Count IV did not adequately allege the absence of an adequate remedy at law; (4) Count VI failed because there is

no private right of action to enforce § 17(a) of the Securities Act; (5) Count VII did not state an underlying Securities Exchange Act violation; and (6) all of USH's claims failed because they sounded in fraud, but were not plead with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

On February 3, 2010, this Court entered an Order (dkt # 23) dismissing all of the claims without prejudice based on USH's failure to plead with particularity. The exception to this was Count VI, which was dismissed with prejudice as both sides conceded it must fail.

On February 23, 2010, USH filed an Amended Complaint (dkt # 28), asserting five claims against Defendants: breach of fiduciary duty (Count I); negligence (Count II); fraud in the inducement (Count III); unjust enrichment (Count IV); and engaging in a fraudulent transaction prohibited by § 517.301, Florida Statutes (Count V). On March 12, 2010, Defendants filed their current Motion to Dismiss (dkt # 32), arguing that: (1) all of USH's claims fail because they sound in fraud, but are not pleaded with particularity as required by Rule 9(b); (2) Count I fails because USH does not adequately allege the existence of a fiduciary duty; and (3) Count IV fails because USH does not allege the absence of an adequate remedy at law. Additionally, Defendants argue that the Amended Complaint should be dismissed with prejudice, rather than affording USH another opportunity to remedy any deficiencies.

## II.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc.,

835 F.2d 270, 272 (11th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)). A complaint must contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002). However, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

### III.   ANALYSIS

#### A.   Federal Rule of Civil Procedure 9(b)

Defendants argue that USH has failed to plead its claims with particularity as required by Rule 9(b). Mot. at 5-8. USH has asserted only two explicit fraud claims: Count III, for fraud in the inducement, and Count V, a fraudulent transaction claim under § 517.301, Florida Statutes. Under Florida law, a fraud in the inducement claim requires a showing of four elements: "(1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808-09 (11th Cir. 2010). Section 517.301 of the Florida Securities and Investor Protection Act makes it unlawful "in connection with the offer, sale, or purchase of any investment or security":

5

> 1. To employ any device, scheme, or artifice to defraud;
>
> 2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> 3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

§ 571.301(1), Fla. Stat. The elements that must be shown under the statute are "(1) a misrepresentation; (2) of a material fact; (3) on which the investor relied." Kashner Davidson Sec. Corp. v. Desrosiers, 689 So. 2d 1106, 1107 (Fla. 2d Dist. Ct. App. 1997) (citing E.F. Hutton & Co. v. Rousseff, 537 So. 2d 978, 981 (Fla. 1989)). Courts have interpreted the elements required by § 571.301(1) to be similar to the elements required by Rule 10b-5, promulgated under the Securities Exchange Act of 1934, except that the scienter requirement under Florida law "is satisfied by [a] showing of mere negligence." Grippo v. Perazzo, 357 F.3d 1218, 1222 (11th Cir. 2004).

Federal Rule of Civil Procedure 9(b) requires fraud claims to be pleaded with particularity. Each of USH's claims sound in fraud because they are premised on the same alleged pattern of misrepresentation. See Liquidation Comm'n of Banco Int'l, S.A. v. Renta, 530 F.3d 1339, 1356 (11th Cir. 2008) ("When fraud is pleaded as an alternative claim, the non-fraud claims in the complaint need not be pleaded with particularity, unless the same misrepresentation forms the basis of both the fraud and non-fraud claim."); Sierra Equity Group, Inc. v. White Oak Equity Partners, L.L.C., 650 F. Supp. 2d 1213, 1231-32 (S.D. Fla. 2009) (claims for the violation of § 517.301, Florida Statutes, are fraud claims subject to the heightened pleading standard of Rule 9(b)). Allegations of systematic misrepresentation are

6

common to all of USH's claims, and are the basis of USH's request for special and punitive damages. Accordingly, all of USH's claims are subject to the heightened pleading requirement of Rule 9(b).

> To satisfy Rule 9(b), a complaint must allege the following:
>
>> (1) precisely what statements were made in what documents or oral representations or what omissions were made; and (2) the time and place of each such statement and the person responsible for making or, in the case of omissions, not making same; and (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1371 (11th Cir. 1997) (citations omitted).

This Court's February 3, 2010, Order Granting in Part Defendants' Motion to Dismiss noted that the Complaint adequately alleged the content of Defendants' misrepresentations, the manner in which USH was misled, who made the statements, and what benefits Defendants obtained through the fraud. See Order (dkt # 23), at 5-6. The sole deficiencies noted in that Order were the Complaint's failure to describe "where the misrepresentations were made" and "when they were made, other than offering a very general time frame." Id. at 6.

The Amended Complaint cures these deficiencies. It alleges that the conversations at issue occurred on March 6, 2006; January 24, 2007; July 19, 2007; and August 7, 2007. Am. Compl. ¶ 30. Further, it alleges that all the conversations took place while USH Assistant Credit Manager Gary Bond was located inside his office "speaking directly with DeBasio, who was located in his office at SunTrust." Am. Compl. ¶ 29. These allegations are sufficiently specific to satisfy Rule 9(b). Defendants' arguments to the contrary relate only to the content of the

alleged statements, and do not dispute that the elements of time and location are now adequately pled. See Mot. at 6-8. However, this Court has already ruled that the content of the alleged statements was sufficient to satisfy Rule 9(b). See Order (dkt # 23), at 5-6.

Even if this Court were to reconsider the prior ruling, the outcome would be the same. The Amended Complaint alleges that the ARS were described to USH by Defendants as being "35 day instruments," "safe and liquid" and "short term cash instruments," when in fact they were 20 year bonds that were risky. Am. Compl. ¶¶ 29, 32, 34. These allegations precisely indicate what statements are being sued upon as fraudulent.

None of Defendants' arguments to the contrary require a different result. Defendants suggest that USH has not sufficiently supported its contention that Defendants knew the instruments were not "short term cash instruments" or that they knew the ARS market would fail. Mot. at 6-8.[4] The Amended Complaint, however, alleges that Defendants did foresee the collapse of the ARS market enough to liquidate "numerous" other customers holdings before the crash and quotes an investment officer as stating "we (SunTrust) saw the crash coming, so we got everyone out" of the ARS market. Am. Compl. ¶ 43. Further, during that time, Defendants allegedly removed their own ARS from the market. Am. Compl. ¶ 85. Irrespective of this, USH need not allege Defendants had actual knowledge of the ARS market's impending downfall to survive Defendants' Motion to Dismiss. Rather, it is enough that Defendants knew and failed to disclose that the financial instruments being sold to USH were long term bonds that, at the moment the allegedly fraudulent statements were made, only had short term liquidity based on auctions manipulated by Defendants. See Am. Compl. ¶¶ 88, 91. USH has properly alleged

---

[4] Of course, actual knowledge that statements are fraudulent need not be alleged or proven for a statutory fraud claim to succeed. See Grippo, 357 F.3d at 1222.

8

particular facts suggesting Defendants had knowledge that they were deceiving USH, including Defendants' failure to provide USH with a prospectus or similar document indicating how the ARS market actually functioned. Am. Compl. ¶ 33. Additionally, Defendants allegedly sent USH weekly statements referring to the securities as "35 day instruments" and did not correct USH when it provided Defendants with financial statements referring to the securities as "short term cash equivalents." Am. Compl. ¶¶ 34, 36. Similarly, Defendants allegedly failed to disclose their participation in the ARS auctions and the fact that they were making a "significant profit" through fees and commissions related to these auctions, or that they were "propping up" the auction market. Am. Compl. ¶¶ 42, 47-48. These alleged facts suggest that Defendants were aware that the securities were not truly low risk instruments, that the auctions did not truly provide liquidity, that USH was unaware of these facts, that Defendants took significant pains to assure USH's continued belief that USH was buying short term, liquid and safe financial instruments, and that Defendants were profiting from this deception.

This case is distinguishable from ARS-related Southern District of New York cases cited in Defendants' Motion. See Mot. at 8 (citing La. Mun. Police Employees' Ret. Sys. v. Pandit, No. 08 Civ. 7389 (LTS) (RLE), 2009 WL 2902587 (S.D.N.Y. Sept. 10, 2009) and La. Mun. Police Employees' Ret. Sys. v. Blankfein, No. 08 Civ. 7605, 2009 WL 1422868 (S.D.N.Y. May 19, 2009)). Both Pandit and Blankfein were derivative lawsuits in which, among other claims, shareholders sought to hold directors personally liable for a failure to act in response to signs that the ARS market was unhealthy and collapsing. Pandit, 2009 WL 2902587, at *1; Blankfein, 2009 WL 1422868, at *1. Both courts dismissed the actions pursuant to Fed. R. Civ. P. 23.1(b) based on their failure to make a demand of the board or to show that such a demand would have

been futile. Pandit, 2009 WL 2902587, at *12; Blankfein, 2009 WL 1422868, at *8. In the course of the decisions, both courts rejected arguments that a demand would be futile because the courts found that the directors faced no "substantial threat of personal liability." Pandit, 2009 WL 2902587, at *7-8; Blankfein, 2009 WL 1422868, at *5. Specifically, in Blankfein, the court found that "failure of the Board to respond correctly to signs that the ARS market was not as healthy and liquid as some employees at Goldman Sachs believed or represented it to be" was not a sign of director bad faith that may cause liability. 2009 WL 1422868, at *5. Similarly, in Pandit, the court found that the directors' alleged failure to respond to "signs of a continued deterioration in the financial markets" was not evidence of bad faith. Pandit, 2009 WL 2902587, at *7-8.

These cases are distinguishable from the present action. As an initial matter, the burden required to hold directors individually liable for a breach in their fiduciary duties under Delaware law is significantly different from the showing required to plead common law and statutory fraud under Florida law. More importantly, this case is factually distinguishable in that USH is not claiming that Defendants should be liable for failing to predict the collapse of the ARS market, but rather for misrepresenting to USH the nature of what ARS were. As noted above, the ARS were described to USH by Defendants as safe "35 day instruments" when they were risky 20 year bonds. Am. Compl. ¶¶ 29, 32, 34. In sum, USH has alleged its claims with sufficient particularity to satisfy the requirements of 9(b).

B.   Existence of a Fiduciary Duty

Defendants argue that USH's fiduciary duty claim (Count I) must be dismissed because USH has not shown a fiduciary duty exists. Mot. at 9-14. A fiduciary relationship exists when

"confidence is reposed by one party and trust accepted by the other." Doe v. Evans, 814 So. 2d 370, 374 (Fla. 2002) (quoting Quinn v. Phipps, 113 So. 419, 421 (Fla. 1927)). To establish the existence of a fiduciary relationship, a party must allege "some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." Barnett Bank of W. Fla. v. Hooper, 498 So. 2d 923, 925-26 (Fla. 1986). Under Florida law, generally, "the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities." Carpenter v. Cmty. Bank of Homestead, 710 So. 2d 65, 66 (Fla. 3d Dist. Ct. App. 1998). An implied fiduciary relationship may exist, however, where the lender "knows or has reason to know of the customer's trust and confidence under circumstances exceeding that of an ordinary commercial transaction." Barnett Bank, 498 So. 2d at 925-26. Such "special circumstances" include "where the lender 1) takes on extra services for a customer, 2) receives any greater economic benefit than from a typical transaction, or 3) exercises extensive control." Capital Bank v. MVB, Inc., 644 So. 2d 515, 519 (Fla. 3d Dist. Ct. App. 1994).

USH has adequately alleged the existence of a fiduciary duty. Specifically, USH alleges that Defendants acted not merely as lenders, but undertook to actively counsel USH about all of USH's investment decisions, as well as USH's internal financial affairs, including its 401(k) fund management. See Am. Compl. ¶ 13. USH further alleges that SunTrust counseled USH about matters touching upon USH's business affairs. See Am. Compl. ¶ 12(d) ("SunTrust regularly counseled USH on all facets of cash management, ranging from daily operations and investments, to funding for major equipment or facility acquisitions."). SunTrust received greater economic benefits for these additional services. See Am. Compl. ¶¶ 12-13. Taking these

allegations as true, USH has adequately alleged that Defendants provided extra counseling services that went beyond the typical arm's length, bank-debtor relationship.

Defendants argue that USH's claims of dependence are not "plausible on their face" under the Twombly pleading standard, because USH is a "sophisticated business . . . with well-defined investment objectives." Mot. at 10-11. While USH alleges that it is a successful business with specific investment goals, it is not implausible that such a business would require guidance to achieve those goals, or that such a business would lack expertise about specialized investment vehicles like ARS.

Defendants also argue that even if USH has pled facts sufficient to show that SunTrust had a fiduciary duty, it has not shown that STRH also had a fiduciary duty. Id. at 13. Defendants are correct that STRH's alleged role in providing investment advice and money management services is less clear than SunTrust's alleged role. Nonetheless, the facts as alleged plausibly state a claim that STRH may be so intertwined with SunTrust that it is an alter ego or agent, see Am. Compl. ¶ 22, and that one of the main employees servicing USH may have been an employee of STRH for part of the relevant period. Am. Compl. ¶ 24. Thus, USH's breach of fiduciary duty claim against Defendants need not be dismissed because USH has sufficiently pled that Defendants owed it a fiduciary duty.

C.   Unjust Enrichment

Defendants argue that USH's unjust enrichment claim (Count IV) must be dismissed because, under Florida law, equitable remedies such as unjust enrichment are only available where there are no adequate remedies at law. Mot. at 14. Defendants also argue that the unjust enrichment claim fails because USH may not argue unjust enrichment in the alternative. Reply

at 8-9. Defendants are correct that USH cannot recover equitable relief where adequate legal remedies are available, and that USH has plead adequate legal remedies. However, dismissing the unjust enrichment claim at this stage would be premature, as no adequate legal remedy has yet been granted and plaintiffs are generally entitled to plead inconsistent and alternative causes of action. While some confusion exists on this point, for the reasons that follow, this Court interprets Florida law to allow an unjust enrichment claim to, at the pleading stage, co-exist with claims which would provide adequate legal remedies.

In 1967, Florida abolished the practice of having separate courts for legal and equitable causes of action. Fla. R. Civ. P. 1.040 ("There shall be one form of action to be known as 'civil action.'"). Before 1967, plaintiffs had to choose between the courts of equity and law and so pre-1967 cases required that no cause in equity is allowed where a complaint plainly shows facts for which an adequate remedy at law exists. See Greenfield Vills., Inc. v. Thompson, 44 So. 2d 679, 683 (Fla. 1950). Several courts, including one cited by Defendants, appear to have continued to follow the pre-1967 approach, even after the 1967 changes had gone into effect. See Martinez v. Weyerhaeuser Mortg. Co., 959 F. Supp. 1511, 1518-19 (S.D. Fla. 1996); see also McNorton v. Pan Am. Bank of Orlando, N.A., 387 So. 2d 393, 399 (Fla. App. 5th Dis. Ct. 1980) ("where a complaint shows on its face that there exists an adequate remedy at law, there

is no jurisdiction in equity"); Mobil Oil Corp. v. Dade County Esoil Mgmt. Co. 982 F. Supp. 873, 880 (S.D. Fla. 1997) (same).[5]

However, at least one Florida court that considered the issue thoroughly concluded that, while equitable relief remains unavailable where an adequate legal remedy exists, this determination should not be made "until the end of a case, often after a jury renders a verdict on the entitlement to" the legal remedy. Billian v. Mobil Corp., 710 So. 2d 984, 991 (Fla. 4th Dist. Ct. App. 1998). As the Billian court notes, to hold otherwise would force a Florida trial court to decide a legal remedy was adequate based on liberal pleading standards that require only a "short and plain statement" of facts. Id.; see also Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A., 938 So. 2d 571, 577 (Fla. 4th Dist. Ct. App. 2006) (holding that at the pleading stage in a case involving breach of contract and unjust enrichment claims "the trial court may not determine the inconsistency of the claims pled"); Innovative Material Sys., Inc. v. Santa Rosa Util., Inc., 721 So. 2d 1233, 1233 (Fla. 1st Dist. Ct. App. 1998) ("An election between inconsistent remedies need only be made before the entry of judgment."); Rubesa v. Bull Run Jumpers, LLC, No. 09-CV-81107, 2010 WL 376320, at *3 (S.D. Fla. Jan. 26, 2010) ("Because the facts are not yet developed in this case, the Court cannot determine whether Count IV [Breach of Implied Warranty] provides an adequate remedy at law.") (applying Florida law); Belaire at Boca, LLC

---

[5] Two other cases that Defendants cite in support of their position are distinguishable from the present action in that both sides agreed an enforceable contract existed and thus they were based on the doctrine that "upon a showing that an express contract exists, the quasi-contract claim fails." Webster v. Royal Caribbean Cruises, Ltd., 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) (citations omitted); Gary v. D. Agustini & Asociados, S.A., 865 F. Supp. 818, 827 (S.D. Fla. 1994). This doctrine does not apply here since, as Defendants acknowledge, USH's "claims are not predicated on any contract." Reply at 12.

v. Ass'ns Ins. Agency, Inc., No. 06-80887- CIV, 2007 WL 1812218, at *4 (S.D. Fla. June 22, 2007) (same).

Further, this reading of Florida law is more consistent with the purposes of Florida's rules of civil procedure, which expressly allow inconsistent pleading. Fla. R. Civ. P. 1.110(g) ("[a] party may [] state as many separate claims or defenses as that party has, regardless of consistency and whether based on legal or equitable grounds or both."); see also Fed. R. Civ. P. 8(d)(2)-(3). To dismiss an unjust enrichment claim at the pleading stage solely because a plaintiff also claims a legal remedy that is facially adequate, but which may or may not ultimately be meritorious, would prevent plaintiffs from pleading inconsistently and force plaintiffs to choose in advance which of two potentially meritorious claims are most likely to prevail.

Nonetheless, while we find that USH's unjust enrichment claim is not precluded by the fact that remedies at law are also alleged in the complaint and though it is clear that the unjust enrichment count was intended to be an alternative one, Defendants are technically correct that plaintiffs must allege that no adequate remedy at law exists as an element of an unjust enrichment claim. This is something that the Amended Complaint fails to do. Thus, the unjust enrichment claim must be dismissed without prejudice. However, USH may file a second amended complaint to cure this omission if it wishes to continue pursuing recovery based on a theory of unjust enrichment.

## IV.     CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss (dkt # 32) is GRANTED IN PART. Count IV of the Amended Complaint is DISMISSED WITHOUT PREJUDICE. USH may file a Second Amended Complaint consistent with the terms of this Order within ten (10) days of the date of this Order. Defendants' Motion to Dismiss is otherwise DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 6th day of May, 2010.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record