UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23222-CIV-MOORE/SIMONTON

U.S. HOLDINGS, INC.,

    Plaintiff

v.

SUNTRUST BANK, et al.,

    Defendants.
_____/

### ORDER GRANTING, IN PART, PLAINTIFF'S RENEWED MOTION TO COMPEL

Presently pending before the Court is Plaintiff's Renewed Motion to Compel (DE # 118). All discovery motions in this case are referred to the undersigned Magistrate Judge (DE # 5). This motion is fully briefed (DE ## 121, 122, 130). For the reasons stated below, the motion is granted, in part.

I.    **BACKGROUND**

Plaintiff, U.S. Holdings, Inc. ("USH"), is proceeding under a five-count Second Amended Complaint in which it alleges that Defendants made material misrepresentations and omissions to Plaintiff that the approximately $14.8 million in Auction Rate Securities (ARS), which Plaintiff purchased from or through Defendants, were short term, same as cash instruments, when they were actually 30-year bonds. Plaintiff alleges that it relied on Defendants for both investment advice and for the management of almost all of its financial affairs. Plaintiff further alleges that although Defendants knew that Plaintiff wished to maintain a very conservative portfolio comprised entirely of safe, short-term liquid investments, contrary to this policy, Defendants began investing Plaintiff's money in the ARS market without informing Plaintiff of the dangers of these investments. Plaintiff alleges that Defendants

deliberately misrepresented the nature of these financial instruments as more short term and liquid than they actually were. The Second Amended Complaint alleges a series of transactions, from March 2006 through August 2007, as to which Plaintiff seeks damages. Specifically, Plaintiff alleges that Defendants: 1) breached the fiduciary duty they owed to Plaintiff (Count 1); 2) were negligent (Count 2); 3) were guilty of fraud in the inducement (Count 3); 4) were unjustly enriched (Count 4); and 5) violated Fla. Stat. 517.301 by perpetrating a scheme to defraud Plaintiff (Count 5) (DE # 41).

Defendants have answered the Second Amended Complaint (DE # 44).

II.     **THE PRESENTLY PENDING MOTION**

The presently pending motion seeks to require the production of additional documents, and seeks to require Defendants to Bates label the previous production of electronically stored information ("ESI"). The positions of the parties with respect to each of these areas is described below.

A.     **The Request for Production of Additional Documents**

*1. The Positions of the Parties*

As to the request for production of additional documents, Plaintiff asks this Court to order Defendant SunTrust to produce documents that were created after February 2008, which are responsive to various requests for production. February 2008 is the month in which the auction rate securities market collapsed. Plaintiff contends that post-collapse documents are likely to lead to admissible evidence on a variety of issues including, "(i) the current fair value of the ARS in dispute; (ii) what SunTrust knew or should have known post-collapse when it was counseling investors to continue to hold ARS; (iii) what SunTrust knew or should have known post-collapse when it was counseling investors to continue to hold ARS on balance sheets at par; (iv) what

analyses occurred post-collapse that were not undertaken prior to February 2008 and during the time the ARS were being marketed and sold as safe, short term, cash instruments; and (v) SunTrust's affirmative defense that USH failed to mitigate its damages post-collapse by selling the ARS it owned at too great of a discount." (DE # 118 at 4).

In response, Defendants contend that the parties had previously agreed that the time frame for the search of ESI would be January 1, 2005 through February 28, 2008, and that Plaintiff should be bound by this prior agreement; and, that any objection to the time frame is untimely since Plaintiff was aware of this limitation months ago and did not object to it. In addition, Defendants contend that the post-collapse documents, other than specific ones that have already been produced, are not relevant to any material issue in dispute. Defendants note that they have already agreed to produce the post-collapse documents with respect to SunTrust custodians, and that they are objecting only to the production from Defendant SunTrust Robinson Humphrey ("STRH") custodians due to the extraordinarily large volume of documents involved. Defendants estimate that more than 80,000 documents will need to be reviewed for relevancy and privilege based upon the search terms and custodians identified by Plaintiff with respect to this newly requested expanded time frame. Defendants argue that the cost and burden of this production far outweighs the likely benefit of the expanded search since these documents are irrelevant.

With respect to its irrelevancy argument, Defendants address each of the five bases upon which Plaintiff claims the documents are relevant. Defendants state that they are aware of no post-collapse documents that analyze the current fair market value of the ARS in dispute; and, that the current fair market value is not relevant since

3

Plaintiff does not seek damages based on the fair market value, but seeks rescission damages based on the original purchase price it paid for the ARS (DE # 121 at 5-6). With respect to the assertion that the documents will shed light on what SunTrust knew or should have known post-collapse when it was counseling investors to hold ARS, and to hold ARS on balance sheets at par, Defendants state that the conduct at issue centers on allegedly fraudulent misstatements or omissions made before or at the time of Plaintiff's purchases; that what Defendants knew or should have known post-collapse is not relevant; and that Defendants are not accountants and did not provide accounting advice to clients regarding the appropriate value for carrying the ARS on balance sheets (DE # 121 at 6-7). With respect to the request for all analyses undertaken post-collapse with respect to the auction rate market, Defendants state that the claims are based on conduct that occurred prior to the collapse and a post-collapse analysis will not shed light on the issues in this case. Defendants agreed, however, to search for and produce any formal analysis of why the market failed (DE # 121 at 7). With respect to the claim that the documents are relevant to Defendants' affirmative defense that Plaintiff failed to mitigate its damages, Defendants state that this defense is not based on Plaintiff's failure to sell ARS in the post-collapse time period, but based on Plaintiff's failure to sell pre-collapse when the evidence establishes that Plaintiff knew about the potential failure of the market but continued to purchase ARS. Defendants note, however, that it has separately asserted a defense that Plaintiff tendered two of its investments at a depressed price, but states that this defense is based on evidence of other sales made in connection with these tender offers and not based on general market conditions (DE # 121 at 7-8).

In Reply, Plaintiff asserts that its request is timely because the discovery responses, in which it stated the limited time frame, were served before SunTrust filed its Answer to the Second Amended Complaint and before Plaintiff was aware that SunTrust had purchased ARS for its own account. Thus, Plaintiff asserts that it has established reasonable cause for its failure to object to the relevant time period specified in Defendants' discovery responses. In addition, Plaintiff asserts that Defendants have read their claims too narrowly and ignored the fact that Plaintiff seeks relief for breach of fiduciary duty, negligence, and statutory fraud. Plaintiff points out that the requested discovery is relevant to prove breach of fiduciary duty based upon the decision of the Eleventh Circuit Court of Appeals in *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042 (11th Cir. 1987), which described the duties owed by an investment advisor as including the duty to recommend an investment only after studying it sufficiently to become informed as to its nature, price, and financial prognosis; and the duty to inform the customer of the risks involved in purchasing or selling a particular security. Plaintiff asserts, as an example, that if a post-collapse analysis of ARS existed when SunTrust began buying ARS for its own account, but there was no pre-collapse analysis, it is probative of SunTrust's scienter and whether SunTrust breached its fiduciary duties to Plaintiff.

After filing the above Reply, Plaintiff filed a Supplement in which it claims that additional documents have not been produced despite the agreement during the meet and confer process to do so (DE # 130).

*2. Analysis*[1]

At the outset, based upon a review of the record in this case, the undersigned finds that the request to expand the relevant time frame is untimely. It is clear that as early as May 28, 2010, with respect to Plaintiff's First Request for Production (DE # 80-3 at 7-8); and as early as September 30, 2010, with respect to Plaintiff's Second Request for Production (DE # 80-4 at 7-8), responsive documents after February 2008 would not be searched for or produced, except as specifically stated in the Responses. After these dates, there was extensive litigation over the sufficiency of the responses. The memoranda filed during those disputes sets forth the nature of the electronic searches that would be undertaken with respect to the search terms, custodians and limitation to "the Relevant Time Period." (DE # 101-4, 101-6).

Moreover, the present Motion to Compel is a **Renewed** Motion to Compel, which was filed after this Court denied the Original Motion to Compel (DE #80) on the grounds that subsequent filings made it clear the most of the discovery disputes referenced in that Motion had been resolved (DE # 109). A review of the Original Motion to Compel (DE # 80, filed 11/10/11), Supplemental Motion to Compel (DE # 91, filed 11/19/10), and the Second Supplemental Motion to Compel (DE # 95, filed 11/23/10) reflects that the issue of the "Relevant Time Period" was not raised in those motions. Therefore, if Plaintiff wanted to challenge the time frame, it should have done so in connection with the earlier litigation concerning the responses.

---

[1] Neither party addressed specific requests, or differentiated among the requests with respect to the relevancy analysis; thus the Court has also considered the time frame issue as equally applicable to all requests.

**The failure to timely raise this issue, however, is not dispositive since the Court, in the exercise of discretion, may nevertheless consider the merits of the dispute. Plaintiff's claim that good cause is shown because the discovery responses were filed before the Answer to the Second Amended Complaint is not convincing since the Answer was filed on June 11, 2010, more than seven months before the instant Motion was filed. The undersigned notes, however, that the Renewed Motion to Compel was filed more than thirty days before the close of the extended discovery period. Thus, Plaintiff arguably could have propounded new requests for the time period from February 2008 to the present, without running afoul of the discovery deadline. This militates in favor of relaxing the time requirement. The undersigned notes that discovery in this case has been contentious, at best, and that Defendants have produced documents in a piecemeal fashion; only after the prior Motions to Compel were filed did Defendants produce many of the requested documents. Moreover, there is still some dispute over whether the agreed-upon document production has been complete. Therefore, the undersigned will consider the merits of the dispute rather than denying it as time-barred.[2]**

With respect to the merits of the dispute, the undersigned agrees with Plaintiff that Defendants have taken too narrow a view of Plaintiff's claims, and that the documents produced post-collapse may indeed shed light on issues related to the pre-collapse purchase of ARS by Plaintiff–particularly with regard to breach of fiduciary duty and negligence. Frequently, what is said or done after an event is relevant to determine

---

[2] The undersigned also notes that, although Defendants suggest that the cost is too great, there is no contention that the cost is more than what would have been incurred if this issue had been timely raised during the first round of discovery motions. Thus, no cost-shifting is imposed.

7

issues related to what occurred in connection with that event; or may lead to relevant, admissible evidence; or may serve as a basis for cross-examination.

Based upon the delay, however, the undersigned will not recommend any extension of any deadlines based upon newly produced documents. In other words, the undersigned finds that Plaintiff is entitled to post-collapse documents, but will not be entitled to retake depositions or to the extension of other deadlines in connection with that production, absent an Order from the District Court.

Therefore, based upon the deadline established by the District Court for completing the deposition of Mr. Debasio, on or before March 30, 2011, Defendant shall produce all documents previously agreed to be produced (as identified in Plaintiff's Supplement (DE # 130)), as well as the additional documents resulting from the search of custodian Debasio. On or before April 6, 2011, Plaintiff shall produce any additional documents resulting from a search of the other custodian(s).

### B.   The Request for Bates Labelling of ESI

In addition, Plaintiff requests this Court to Order SunTrust to Bates label its electronic production of documents (DE # 118 at 4-5). Plaintiff contends that this is required by the Discovery Practices Handbook, which has been appended to the S.D. Fla. Local Rules, and that it is necessary to ensure that relevant documents can be easily located and referenced.

In opposition, Defendants contend that this will cause undue and unnecessary expense to label documents that Plaintiff has contended are only "tangentially relevant" to the dispute. In order to Bates label the production, Defendants assert they will be required to convert the documents from native file format to pdf or tiff images, which will materially alter the documents, and which will cost between $16,000.00 and $75,000.00.

In addition, Defendants contend that the documents were produced as kept in the ordinary course of business, and therefore under S.D. Fla. Local Rule 34.1, Bates labeling is required only for documents identified by the receiving party.

In reply, Plaintiff states that Bates labeling will not materially alter the documents, is required by the Discovery Practices Handbook contained in the Local Rules, and that the $16,000.00 expense of such labeling is not overly expensive given the nature of the claims and the amount in controversy.

The undersigned interprets the Discovery Practices Handbook to ordinarily require Bates labeling of electronically stored information. However, Plaintiff has not controverted Defendants' statement that to label the previously produced documents they would have to be converted from native format to tiff or pdf images. It appears that there was no objection to the production of ESI in native format; and, it appears that the vast majority of the ESI produced is not directly relevant to the claims and defenses in the case at bar. Therefore, at this stage of the litigation, and under the circumstances of this case, Defendants are not be required to Bates label the ESI already produced. However, any future production of ESI shall be Bates labeled.

### III.     CONCLUSION

Thus, for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion is **GRANTED, in part,** as set forth in the body of this Order.

**DONE AND ORDERED** in chambers in Miami, Florida on March 23, 2011.

_____
**ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE**

Copies to:
The Honorable K. Michael Moore,
    United States District Judge
All counsel of record